Larry W. Lee (SBN 228175)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
Tel: (213) 488-6555
Fax: (213) 488-6554
Email: lwlee@diversitylaw.com

Attorneys for Plaintiff and the Class
(Additional Counsel on Next Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESSAMELDIN ISMAIL, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN AIRLINES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-cv-01111-KK-JPR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        January 16, 2025<br>Time:        9:30 a.m.<br>Courtroom:   3<br>Judge:       Hon. Kenly Kiya Kato |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# **ADDITIONAL ATTORNEYS**

Dennis S. Hyun (SBN 224240)
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
Tel: (213) 488-6555
Fax: (213) 488-6554
Email: dhyun@hyunlegal.com

Edward W. Choi, Esq. (SBN 211334)
**LAW OFFICES OF CHOI & ASSOCIATES**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Tel: (213) 381-1515
Fax: (213) 465-4885

Justin Lo, Esq. (SBN 280102)
**WORK LAWYERS PC**
22939 Hawthorne Blvd. Suite 202
Torrance, CA 90505
Tel: (424) 355-8535
Fax: (213) 784-0032

Attorneys for Plaintiff
ESSAMELDIN ISMAIL

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 16, 2025 at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Central District of California, located at 3470 12th Street, Riverside, California 92501, the Honorable Kenly Kiya Kato, District Judge presiding, Plaintiff ESSAMELDIN ISMAIL ("Plaintiff") will and hereby does move this Court for an Order finally approving the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court issue an Order granting final approval of the proposed class action settlement.

Given that this is a Motion for Final Approval of a Settlement reached with Defendant AMERICAN AIRLINES, INC. ("Defendant") (Defendant and Plaintiff collectively referred to as the "Parties"), Plaintiff does not anticipate that Defendant will oppose this Motion.

This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the attached Memorandum of Points and Authorities in Support, the accompanying Declaration of Taylor Mitzner on behalf of Phoenix Settlement Administrators, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED: December 5, 2024         LAW OFFICES OF CHOI & ASSOCIATES, APLC

                                By:   /s/ Edward W. Choi
                                      Edward W. Choi, Esq.
                                      Attorney for Plaintiff and the Class

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................... 1

II.  THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT ........................................................ 1

   A.   Dissemination of Notice ..................................................................... 1

   B.   No Objections Have Been Filed To Date and One Exclusion Has Been Requested ................................................................................... 2

III. OVERVIEW OF ISSUES AND ARGUMENT ................................................. 2

IV. LITIGATION HISTORY AND INVESTIGATION ......................................... 4

V.  THE SETTLEMENT .................................................................................. 5

VI. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL ................................................................................................ 6

   A.   The Strength of Plaintiff's Case Supports Settlement ......................... 7

   B.   Risks, Expense, and Duration of Continued Litigation Supports Settlement ............................................................................................ 7

   C.   The Settlement Amount Favors Settlement ........................................ 8

   D.   The Extent of Discovery Favors Settlement ....................................... 9

   E.   The Recommendations of Counsel Favor Approval of the Settlement 9

   F.   The Class Has Responded Favorably to the Proposed Settlement ... 10

   G.   The Procedure Through Which the Settlement Was Achieved Supports Final Approval .................................................................. 11

VII CONCLUSION. ...................................................................................... 13

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) ...................... 11

*Bellinghausen v. Tractor Supply Co.*, No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ................................................................................ 9

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ............................. 11

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ... 7, 10, 12, 13

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) ..................... 12

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................ 7

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) ........................................................................................................... passim

E*llis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ..................... 6, 7, 13

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) .................. 9, 10

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ......... 12

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) .............................................. 6

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ................................. 11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ................. 15

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) ..................................................................................................................... 8

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) ...................................................................... 14

*Officers for Justice*, 688 F.2d at 625 ....................................................................... 13

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ............ 12

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ........................ 11

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .................. 13, 14

ii

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)..............................11, 14

**Statutes**

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*.......3, 4

Labor Code § 226.7 ........................................................................................2, 4

**Other Authorities**

2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) ...................................12

*Manual for Complex Litigation* (Fourth) § 21.6 (2004)..............................................11

*Manual For Complex Litigation* (Fourth) § 30.42)....................................................12

**Rules**

Federal Rule of Civil Procedure 23(e)........................................................................6

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this motion, Plaintiff ESSAMELDIN ISMAIL ("Plaintiff") seeks final approval of a class-wide settlement reached between Plaintiff and Defendant AMERICAN AIRLINES, INC. ("Defendant") (Defendant and Plaintiff collectively referred to as the "Parties"). On September 11, 2024, this Court granted preliminary approval of this class action settlement. (Dkt No. 62). The Parties now seek this Court's final approval of the settlement.[1]

The settlement requires Defendant to pay a total of Four Hundred Fifty Thousand Dollars ($450,000.00) Gross Settlement Value ("GSV"), a sum which represents a substantial recovery for the members of the Class. **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant.** Significantly, there was no claims process, such that class members will automatically receive their payment so long as they did not opt-out. Class members were given an opportunity to object or opt-out of the settlement. There were **no objectors** and only **1 opt out** request. Accordingly, this shows that the class members have reacted favorably to the settlement. Thus, all class members, who did not opt out, will automatically be issued a settlement check. Moreover, all of this Court's orders concerning dissemination of Notice of the Settlement have been scrupulously followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A. Dissemination of Notice

As noted above, preliminary approval was granted on September 11, 2024.

---

[1] As directed by the Court, Plaintiff filed his Motion for Attorneys' Fees, Costs, and Enhancement Award on October 24, 2024 (Dkt. No. 63).

1

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

(Dkt No. 62). Plaintiff provided the Notice to the Court approved Settlement Administrator, Phoenix Settlement Administrators (the "Settlement Administrator"). The Parties, through the work of the Settlement Administrator, have complied with this Court's orders concerning dissemination of the class notice. (Declaration of Taylor Mitzner for Phoenix Settlement Administrators, Inc. ("Admin Decl.") ¶¶ 2-13). In addition, the Settlement Administrator established and operated a toll free telephone number for class members to call with inquiries concerning the settlement and the settlement process. (*Id.* at ¶ 2).

The Notice was mailed to the class of 166 individuals utilizing the data provided by Defendant. (Admin Decl. ¶¶ 3, 6-8). Of those, nine (9) Notices were returned and six (6) Notices were re-mailed after skip traces were performed to find a new updated address. (*Id.* at ¶ 8) The Settlement Administrator could not locate addresses for three (3) Class Members because updated address through skip trace and, thus, three (3) Notices remain undeliverable. (*Id.* at ¶¶ 8-9).

**B.   No Objections Have Been Filed To Date and One Exclusion Has Been Requested**

As of the date of the filing of this Motion, which is the deadline to opt-out or object, not a single individual has filed any objections to this settlement, and only one individual has requested to opt-out of the current settlement, further evidencing the favorable view of the settlement from class members. (Admin Decl. ¶¶ 10-11).

**III.   OVERVIEW OF ISSUES AND ARGUMENT**

As discussed in detail in the previously filed Motion for Preliminary Approval (Dkt No. 60), and briefly mentioned above, Plaintiff alleges the class claim at issue in this lawsuit arises out of Defendant's misclassification of supervisors as exempt employees and, based on the misclassification, Defendant (1) failed to provide proper meal breaks under California Labor Code § 226.7; (2) failed to authorize and permit proper rest breaks under the California Labor Code § 226.7; (3) failed to pay all overtime wages owed, including without limitation,

2

based on the regular rate of pay by not factoring in shift differential and/or shift premium wages, such as "Mgt Tech Ops Premiums," into the regular rate of pay; (4) failed to pay proper sick pay wages in the same period in which such employees earned any non- discretionary incentive wages, including without limitation, shift differential and/or shift premium wages, such as Mgt Tech Ops Premiums; and (5) failed to reimburse business expenses for level 3 and level 4 supervisors who utilize their cell phones during their shifts. Based on these allegations, Plaintiff further claims that American violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (Dkt. No. 60).

Defendant, however, strongly disagrees with Plaintiff's contentions and believes that Plaintiff's claims are without merit. In particular, Defendant would have argued that Plaintiff and Class Members were correctly classified as exempt and that to prove non-exempt status on a class-wide basis would have created individualized inquiries. Moreover, even if Plaintiff could proceed on class certification, Defendant would have argued that establishing liability on the underlying overtime, meal and rest period, expense reimbursement and sick pay claims would have created further individualized inquiries. Further, to the extent that any appeals would have to be taken, Plaintiff and the Class would not have received any compensation from this case until such appeals were exhausted and assuming that the appeal was decided in Plaintiff's favor. Therefore, Plaintiff and the Class would have faced substantial risk in proceeding with the litigation had a settlement not been reached.

The negotiations were hard fought and contentious. As a result thereof, the parties have reached the current settlement, which provides for a total settlement sum of Four Hundred Fifty Thousand Dollars ($450,000.00), inclusive of payments to settlement class members, class representative enhancements, attorneys' fees and costs, and administration costs.

///

## IV. LITIGATION HISTORY AND INVESTIGATION

On October 14, 2021, Plaintiff filed his Complaint against Defendant in the Los Angeles Superior Court. (Declaration of Edward W. Choi, Dkt. No. 63-1 ("Choi Decl.") ¶ 3). On February 17, 2022, Defendant removed to the United States District Court for the Central District of California, captioned *Ismail v. American Airlines Inc.,* Case No. 2:22-cv-01111. (*Id.* ¶ 4). On December 30, 2022, Plaintiff filed a First Amended Complaint after receiving leave of this Court. (Dkt. Nos. 23 & 24). *Id.* ¶5. On February 23, 2023, Plaintiff to file a Second Amended Complaint, after receiving leave of this Court. (Dkt. Nos. 28 & 29). On July 14, 2023, the Court granted in part and denied in part American's Motion to Dismiss the Second Amended Complaint. (Dkt. No. 38). Plaintiff to file a Third Amended Complaint on July 28, 2023 ("Operative Complaint"). (Dkt. No. 40). On August 18, 2023, Defendant filed an Answer to the Third Amended Complaint. (Dkt. No. 42).

The Operative Complaint asserts that American misclassified supervisors as exempt employees and based on the misclassification (1) failed to provide proper meal breaks under California Labor Code § 226.7; (2) failed to authorize and permit proper rest breaks under the California Labor Code § 226.7; (3) failed to pay all overtime wages owed, including without limitation, based on the regular rate of pay by not factoring in shift differential and/or shift premium wages, such as "Mgt Tech Ops Premiums," into the regular rate of pay; (4) failed to pay proper sick pay wages in the same period in which such employees earned any non-discretionary incentive wages, including without limitation, shift differential and/or shift premium wages, such as Mgt Tech Ops Premiums; and (5) failed to reimburse business expenses for level 3 and level 4 supervisors who utilize their cell phones during their shifts. Based on these allegations, Plaintiff further claims that American violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (Choi Decl. ¶ 9, Dkt. No. 63-1).

The Parties engaged in significant discovery and conducted an extensive

4

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

meet and confer process regarding discovery responses.  Further, the Parties have also exchanged data and documents, including the data for the entire class to permit Plaintiff to conduct a damage analysis.

On February 22, 2024, the Parties engaged in a full day of private mediation with Jeffrey Fuchsman. (Choi Decl. ¶¶ 11-12, Dkt. No. 63-1). The case did not settle at mediation, but with Mr. Fuchsman's help, the Parties settled the case through acceptance of Mr. Fuchsman's mediator's proposal on February 23, 2024. (*Id.* ¶12).

On September 11, 2024, this court granted Plaintiff's Motion for Preliminary Approval.

On October 24, 2024, Plaintiff filed his Motion for Approval of Attorneys' Fees, Costs, and Class Representative Service Payment. (Dkt. No. 63). The hearing is set before this Court for the same date and time as this Motion for Final Approval, *i.e.*, January 16, 2025 at 9:30 a.m..

## V.     THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement filed on October 31, 2016.  (Dkt No. 60). The principal terms are:

   a.     Defendant will pay a total Settlement Amount of $450,00.00.  This sum includes payments made to the settlement class members, settlement administration costs, awards of attorneys' fees and costs.

   b.     The sum available for use for payments to class members after the settlement administration costs, and awards of attorneys' fees and costs as the Net Settlement Amount.  Defendant agree that it shall pay the entirety (100%) of the Net Settlement Amount. **In other words, the settlement is non-reversionary, meaning that no funds will revert back to Defendant.**

5

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

   c. No claim forms were necessary for any class member to participate in the settlement and receive their share of the settlement. Thus, any class member who did not opt-out in connection with this settlement notice will automatically receive his/her share of the settlement proceeds. On average, each class member will receive approximately a payment of $1,675.52.

   d. All of this Court's orders in connection with the settlement administration process have been followed. (*See* Declaration of Abigail Admin filed herewith).

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy. Clearly, there were significant disagreements between the Parties as to the facts and the law.

## VI. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of class members to the proposed settlement." *Hanlon*

150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A. The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). As noted above, while Plaintiff believes that the class could be certified and that there is ample case law to support Plaintiff's contentions in this matter, there was no guarantee.

Therefore, this factor favors settlement. See *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B. Risks, Expense, and Duration of Continued Litigation Supports Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). Briefing on class certification, liability and damages, including with respect to any anticipated Motion for Summary Judgment, as well as preparation for trial would have been time-consuming and expensive. Moreover, Plaintiff acknowledges that there was a significant risk that he would recover nothing for himself and the Class after further protracted litigation. Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

**C. The Settlement Amount Favors Settlement**

The standard of review for class settlements is whether the Settlement is within a range of reasonableness. As Professor Newberg comments:

> "Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness…. "

4 Newberg on Class Actions, at §11.45.

Numerous courts have held that **gross** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable. *See*, *e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case"); *Bellinghausen v. Tractor Supply Co.*, No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair).

Here, as noted in the Court's Preliminary Approval Order, the settlement is approximately 10% of the estimated potential recovery. (Dkt. No. 62, page 11). The settlement fund is non-reversionary, such that 100% of the Net Settlement Amount will be available for distribution to class members who do not opt-out. Moreover, the settlement did not require claim forms. Rather, class members who did not opt-out will receive a check. Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.). In addition, as set forth in

the Settlement Agreement, the class release is expressly limited to the class and representative claims asserted in this case.

Moreover, courts have acknowledged that, even if the court has concerns about the class recovery, the lack of objection to the recovery by the class weighs in favor of finding that the settlement amount is fair and reasonable. *See Chun-Hoon*, 716 F. Supp. 2d at 851. In *Chun-Hoon*, although the court had concerns about the adequacy of the settlement during preliminary certification, the lack of objection to the settlement aided the court in determining that the settlement was beneficial to the class. *Id*. Here, not a single objection was filed.

As such, this settlement should be viewed favorably.

### D. The Extent of Discovery Favors Settlement

The Parties engaged in significant discovery. Plaintiff propounded written discovery and engaged in a meet and confer process with the defense regarding Defendant's discovery responses. (Choi Decl. ¶¶ 11-12). Further, the Parties have also exchanged data and documents, including the data for the entire class to permit Plaintiff to conduct a damage analysis. (*Id.* ¶ 11).

Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement. *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3 (parties' participation in written discovery, depositions, witness interviews, and formal mediation favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (" true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### E. The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v.*

*Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980).

Lead counsel for Plaintiff has broad experience litigating employment class actions. (Choi Decl. ¶¶ 14-15, Dkt. No. 63-1; Declaration of Larry Lee (Dkt. No. 63-3 ("Lee Decl.") ¶¶ 3-6; Declaration of Justin Lo (Dkt. No. 63-4) ("Lo Decl.") ¶¶ 6-9; Declaration of Dennis Hyun (Dkt. No. 63-2) ("Hyun Decl.") ¶¶ 3-6). As set forth in Plaintiff's attorneys' declarations in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, they support this settlement as a fair and reasonable settlement which is in the best interest of the settlement class. Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

### F. The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, not a single objection was filed. Further, only one individual has opted out of this settlement. (Admin Decl. at ¶¶ 11-12). In other words, this settlement has a 99.40% participation rate and not a single objection. (*Id.*) Thus, the lack of any objections and opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving

settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G. The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982) . Therefore, although not one of the Officers for Justice listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation* (Fourth) § 21.6 (2004). As noted above, the parties participated in an arm's-length negotiation, facilitated by a professional mediator with significant class action experience. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The *Rodriguez* Court "put a good deal of stock in the product of an arms'

11

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42).

        The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

        The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits.

///

## VII. CONCLUSION

The parties have reached this settlement following extensive litigation, ongoing case discussions and arms-length negotiations. Plaintiff respectfully requests that the Court:

1. Grant final approval of the proposed settlement;

2. Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3. Grant the contemporaneously pending Motion for Award of Attorneys' Fees, Costs;

4. Enter the proposed Final Approval Order and Final Judgment submitted herewith; and

5. Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the settlement.

DATED: December 5, 2024    LAW OFFICES OF CHOI & ASSOCIATES, PLC

            By:   /S/ Edward W. Choi
               Edward W. Choi, Esq.
               Attorney for Plaintiff and the Class